UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JENNIFER LYNNE KARR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | CAUSE NO. 1:19CV179-PPS |

## ORDER

Jennifer Lynne Karr was 41 years old on April 21, 2016 when she filed an application for a period of disability and disability insurance benefits. [AR at 18.][1] Karr claimed that she had become disabled beginning February 6, 2016. [*Id*.] An administrative law judge held a hearing on Karr's application on November 30, 2017, at which Karr appeared and testified, accompanied by a non-attorney representative, George W. Merkle. [*Id*.] The ALJ issued her decision on May 9, 2018, finding that Karr has a number of severe impairments: degenerative disc disease, status post cervical fusion of her C5-6 vertebrae, generalized anxiety disorder, and major depressive disorder. [*Id*. at 21, 30.] She agreed with the vocational expert that Karr is no longer able to perform past jobs she has held, in the categories of "laborer, stores," "inspector, general" and "production machine tender." [*Id*. at 28.] But the ALJ ultimately

---

[1] The administrative record [AR] is found in the court record at docket entry 10, and consists of a total of 987 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

concluded that Karr is not disabled because she retains the residual functional capacity to perform sedentary work with some specified limitations. [*Id*. at 23.] The Appeals Council denied Karr's request for review, leaving the ALJ's denial of benefits as the Social Security Administration's final decision.

## Discussion

My review of the Commissioner's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's

2

ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Karr's sole argument for reversal is that the ALJ did not properly weigh the opinion of her treating neurosurgeon, Dr. Isa Canavati. The opinion in question appears to be Dr. Canavati's statement that Karr "cannot sit, stand or walk for any sustained period of time and the pain is interrupting her sleep." [AR at 981.] This statement was made to another of Karr's treating physicians, Dr. Matthew Hess, in a letter dated November 13, 2017. After examining Karr, Dr. Canavati discussed treatment options for her chronic low back pain, with Karr opting for surgery, "namely L5-S1 laminectomy, discectomy and fusion." [*Id.*]

The ALJ's hearing was held on November 30, 2017. At that time, Karr's representative informed the ALJ that "she just in recent weeks consulted a neurosurgeon and there is a note and she's planning to have surgery in January." [AR at 84.] Karr had seen Dr. Canavati in 2012, and then not again until this visit in November 2017. [AR at 95, 981.] Karr testified that Dr. Canavati said her condition had "gotten extremely worse," and that surgery was scheduled for January 17, 2018. [*Id*. at 95.] Karr described her "#1 problem physically" as her low back pain. [*Id*. at 103.] The ALJ left the record open for 14 days after the hearing to allow Karr to submit Dr. Canavati's letter, which then was made part of the administrative record. [*Id*. at 112.]

The ALJ's decision was issued several months later, on May 9, 2018. [AR at 30.] By that time, the ALJ had received Dr. Canavati's letter, containing the conclusion Karr

3

now relies on, and diagnosing advanced degenerative disc protrusion at L5-S1. [AR at 981.] This finding is made in comparison with Dr. Canavati's conclusion in 2012 as to the seriousness of her L5-S1 disc protrusion at that time, when Karr "opted for continued conservative treatment." [*Id*.] Karr's brief advises that she underwent "posterior instrumented spinal fusion (PISF) at L5-S1 on January 17, 2018." [DE 12 at 12; *see also* AR at 39-40.] The administrative file also contains records of several post-operative medical visits. [AR at 13-14, 38.]

The ultimate impact that the surgery may have had on Karr's back pain and general functioning are not reflected in either the administrative record or this judicial record. The ALJ was not able to take into account the current status of Karr's low back pain from degenerative disc disease, what she referred to as "her #1 physical problem." The Appeals Council advised Karr that the ALJ decided her case through the date of her decision, May 9, 2018, and that evidence after that date "does not relate to the period at issue" and "does not affect the decision." [AR at 2.] Karr was advised that if she wants the Commissioner to consider whether she was disabled after May 9, 2018, she needs to apply for benefits again. [*Id*.] Nonetheless, the fact that Karr has undergone a surgery to address her back pain since Dr. Canavati noted that she was unable to sit, stand or walk for any sustained period of time, necessarily means that the statement is now "stale" in the sense that it does not reflect Karr's current condition or limitations.

I must nonetheless address the significance of Dr. Canavati's relied-upon statement (that Karr "cannot sit, stand or walk for any sustained period of time"), and

4

the adequacy of the ALJ's handling of it. First, I note that the portions of a doctor's notes that are a recital of the patient's *reported* history are not part of his assessment and do not constitute medical opinion. *Green v. Colvin*, 605 Fed.Appx. 553, 559 (7th Cir. 2015). *Green* involved a doctor's note that the claimant had "very little abdominal pain unless she sits for long periods of time." *Id*. It is plain to me that the statement in Dr. Canavati's letter to Dr. Hess — that Karr "cannot sit, stand or walk for any sustained period of time" — is the doctor's recitation of what Karr reported to him. It is not a medical assessment based on the doctor's own examination or testing. This is further borne out by the context in which the statement is made in Dr. Canavati's letter; it is adjacent to information about interruption of Karr's sleep, recent difficulty lying in bed, and areas of increasing pain, all information which would have been reported to Dr. Canavati by Karr. [AR at 981.]

The distinction observed in *Green*, and which I apply here, seems to me a significant one, as I frequently observe claimants attempting to treat self-reported information, that is then repeated in a doctor's notes, as the *doctor's* medical opinion. In many instances, this sort of information is not shown to reflect a "judgment" by the doctor, as required to constitute a "medical opinion" within the meaning of §416.927(a)(1).

But let's set that aside and suppose that Dr. Canavati's statement does constitute a medical opinion. The regulatory guidance governing the Commissioner's evaluation of opinion evidence is found in 20 C.F.R. §416.927. The opinion of a treating medical

5

source is entitled to controlling weight if it addresses "the nature and severity of [the claimant's] impairment(s)[,] is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence" in the record.  §416.927(c)(2).

We know that the ALJ did not overlook Dr. Canavati's letter because her decision repeatedly cites the letter and incorporates the substance of it.  Reviewing various portions of the medical record pertinent to Karr's back pain, the ALJ noted some of the medical history reviewed by Dr. Canavati, such as epidural injections and physical therapy. [AR at 24-25.]  The ALJ echoed Dr. Canavati's findings of tenderness to palpation and positive straight leg raise, as well as his conclusion from a recent MRI that Karr showed L5-S1 central disc disease with moderate stenosis with transitional anatomy.  [*Id*.]  The ALJ noted that Dr. Canavati had reviewed with Karr the options of continuing pain management or undergoing surgery in the form of laminectomy, discectomy and fusion.  [*Id*. at 25.]

Later in her decision, the ALJ gives "partial weight" to Dr. Canavati's opinion that Karr could not "sit, stand or walk for any sustained period of time and the pain is interrupting her sleep," finding it to be too extreme in comparison with other indications in the medical record, namely "the fact that the claimant has maintained normal findings during examination, such as 5/5 strength throughout, intact sensory, normal gait with no assistive device, and the ability to walk on heels and toes and tandem walk (13F/2, 15F/12, 24F/4, 30F/20, 31)." [*Id*.]  The ALJ's explanation for

6

depreciating the opinion (giving it only "partial weight") is that it is not consistent with five other medical records the ALJ cites and summarizes. [AR at 27.]

It is true that one of the reports cited by the ALJ contains some information supportive of Karr's claims: "[g]ait is mildly antalgic"; range of motion deficits in Karr's lower back, knees, left hip and ankle; a finding of "Chronic Lower Back Pain with Left Sciatica." [AR at 562, 563.] But that examiner, Dr. H. M. Bacchus, Jr., nonetheless concluded that Karr "appears to retain the physical functional capacity to perform light duties with alternate sitting, standing and walking[.]" [*Id.* at 563.]

Another record the ALJ cites is that of Physician Assistant Lisa Bobay of the Emergency Department of Parkview Hospital, to which Karr presented on May 25, 2017 complaining of back pain. Bobay notes Karr's ability to ambulate with a normal gait without assistance, but moderate diffuse lumbar paraspinal muscle tenderness to palpation. [AR at 785.] She finds that Karr has grossly normal motor strength throughout, but notes that Karr "resists forward flexion and attempts at lateral bending or rotation due to pain." [*Id.*] Interestingly, Bobay's repeatedly indicates that Karr complains of back pain *present for the past month* after doing a lot of lifting and slipping on the U-Haul truck ramp while helping her niece move. [*Id.* at 783, 786.] Bobay found no objective findings of neurologic deficit, concluded that the pain was musculoskeletal and would improve with rest, and provided a muscle relaxer. [*Id.* at 786.]

The final record cited by the ALJ is of Karr's visits to her treating physician Dr. Matthew D. Hess. On July 17, 2017, Dr. Hess noted no abnormalities of Karr's back

7

(normal range of motion and no costoverterbral tenderness) and extremities ("normal, atraumatic, no cyanosis or edema"). [AR at 914.] Neurologically, Dr. Hess recorded "[n]ormal strength, sensation and reflexes throughout." [*Id*.] The same findings were made by Dr. Hess on Karr's visits of April 20, 2017 and December 19, 2016. [*Id.* at 929, 940.]

I find no reversible error in the ALJ's handling of Dr. Canavati's conclusion about Karr's inability to sit, stand or walk for sustained periods. The ALJ's decision shows detailed attention to what the medical record indicates over time concerning Karr's back and its impact on her strength and ability to move. There is no dispute that Karr suffered from degenerative disc disease affecting her lower back, and the record reflects that, as the ALJ found. The ALJ's determinations about Karr's residual functional capacity must be made against the backdrop of a record supporting severe impairments. Conclusions as to the extent of Karr's limitations appear to have been reasonably made, supported by the medical record and with Karr bearing the burden of demonstrating disabling limitations. The ALJ's decision contains other signs that she was not predisposed to reject all appropriate limitations on Karr's functional capacity. With respect to both consultative examiner Dr. Bacchus and state agency consultants Dr. Sands and Dr. Brill, the ALJ finds that "evidence received at the hearing level shows that the claimant is more limited than" those doctors determined. [*Id*. at 32.] As a result, the ALJ added limitations to the RFC beyond the ones determined by those physicians.

8

Karr's argument boils down to the assertion that because Dr. Canavati, as a neurosurgeon and a Fellow of the American College of Surgeons, is a treating *specialist*, his opinion is entitled to greater weight than that of non-specialists or physicians outside their specialty. [DE 12 at 18.] But "'once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). Where a treater's opinion is not entitled to controlling weight, its weight is to be evaluated on the basis of the factors enumerated in the regulations. §416.927(c)(2). Those factors are the length and extent of the treatment relationship and the frequency of examination; the support for the opinion in terms of explanation, medical signs and laboratory findings; the consistency of the opinion with the record as a whole; and whether the treater is a specialist. §416.927(c)(2)-(5).

It is true that the ALJ's explanation concerning Dr. Canavati's opinion was somewhat cursory. But her decision makes clear that she knew of the treatment relationship between Dr. Canavati and Karr, that he is a surgeon who had examined her, and that his opinion was given after his review of an MRI showing "L5-S1 central disc disease." [AR at 25, 27.] As the Court of Appeals has said, "the ALJ need not blindly accept a treating physician's opinion – she may discount it if it is ...contradicted by other substantial medical evidence in the record." *Henke v. Astrue*, 498 Fed.Appx. 636, 639 (7th Cir. 2012). Although some explanation of the decision to discount a

9

treater's opinion is required, "the ALJ's decision must stand as long as she has 'minimally articulated' her reasons for rejecting the treating doctor's opinion." *Henke*, 498 Fed.Appx. at 639, quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "[A]ll but the most patently erroneous reasons for discounting a treating physician's assessment" are upheld. *Luster v. Astrue*, 358 Fed.Appx. 738, 740 (7th Cir. 2010), quoted in *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

## Conclusion

As is true of every claimant for Social Security disability benefits, Jennifer Karr has significant health challenges. But "having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work." *Weaver v. Berryhill*, 746 Fed.Appx. 574, 578-79 (7th Cir. 2018). To qualify for benefits, Karr bears the burden "to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Id*. at 579. She has failed to do this.

It is also important to recognize that the scope of judicial review is limited. I find that the ALJ sufficiently articulated her findings and conclusions to permit meaningful judicial review, so that a remand is not warranted for lack of explanation. Beyond that, my role is not to determine whether the plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Hawkins v. Saul*, 2019 WL 6492491, at *1 (7th Cir. Dec. 3, 2019). "The ALJ needed only to minimally articulate her reason for rejecting the

10

[treater's] opinion, and substantial evidence supports the ALJ's conclusion that the opinion is not entitled to controlling weight." *Olsen v. Colvin*, 551 Fed.Appx. 868, 876 (7th Cir. 2014), citing *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).  Applying these standards, I will affirm the denial of disability benefits.

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Jennifer Lynne Karr's applications for disability insurance benefits and supplemental security income is AFFIRMED.  The Clerk shall enter judgment in favor of defendant Commissioner and against plaintiff.

**SO ORDERED**.

ENTERED:  April 6, 2020.

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**

11